IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

VALERIE DENTMAN, SCOTTIE
SPILLMAN, JAYDE SPILLMAN, and
ZAMUARIE SPILLMAN,

      Plaintiffs,

v.                                 No.

THE NEW MEXICO CHILDREN, YOUTH
& FAMILIES DEPARTMENT, TAMARA
LETCHER in her individual capacity,
and DOE DEFENDANTS 1-10,

      Defendants.

## FIRST AMENDED PLAINTIFFS' COMPLAINT

Valerie Dentman ("Valerie"), Scottie Spillman ("Scottie"), Jayde Spillman ("Jayde"), and Zamuarie Spillman ("Zamuarie") (collectively, "Plaintiffs"), through undersigned counsel, complain as follows against the New Mexico Children, Youth & Families Department ("CYFD"), Tamara Letcher ("Letcher"), and Doe Defendants 1-10 ("Doe Defendants") (collectively, "Defendants").

## INTRODUCTION

1.      This lawsuit seeks accountability for the systemic, race-based discrimination within CYFD that caused Plaintiffs—who are African-Americans—to be unjustly barred from adopting their grandson.

2.      Despite Plaintiffs' prompt, diligent efforts to become licensed foster parents, and despite CYFD's purported preference for kinship placement, Defendants rigged the process to make sure Plaintiffs' infant relative would be adopted by unrelated, non-black foster parents.

3.      On February 3, 2023, CYFD's own Inspector General formally substantiated what Plaintiffs had suspected: Plaintiffs had been the victims of racial discrimination.

1

4.      Plaintiffs bring this action pursuant to Title VI of the Civil Rights Act of 1964 and 42 U.S.C. § 1983, seeking damages to redress CYFD's violations of federal law and the Equal Protection Clause of the Fourteenth Amendment.

## PARTIES

5.      Plaintiff Valerie Dentman is an African-American citizen of New Mexico. She resides in Curry County.

6.      Plaintiff Scottie Spillman is an African-American citizen of New Mexico. He resides in Curry County.

7.      Plaintiff Jayde Spillman is an African-American citizen of Texas. She resides in Bell County.

8.      Plaintiff Zamuarie Spillman is an African-American citizen of New Mexico. She resides in Curry County.

9.      Defendant New Mexico Children, Youth & Families Department is New Mexico's child protective services agency. It is headquartered in Santa Fe County, New Mexico.

10.      Defendant Tamara Letcher is a former county office manager for CYFD's Clovis office. On information and belief she resides in Eddy County, New Mexico. She is sued in her individual capacity.

11.      Doe Defendants 1-10 are CYFD employees who participated in the illegal conduct complained of herein. Plaintiffs will amend this complaint once their names are ascertained.

## JURISDICTION

12.      This Court has jurisdiction because the facts giving rise to Plaintiffs' claims occurred in New Mexico and all parties reside in New Mexico.

13.      Jurisdiction is also proper because, through this action, Plaintiffs seek to vindicate rights afforded them by federal law.

14.      Venue is proper because substantially all the events giving rise to this action occurred in New Mexico.

**ALLEGATIONS**

15.    Valerie and Scottie are married.  Jayde and Zamuarie are their adult daughters. Valerie, Scottie, Jayde, and Zamuarie are African-American.

16.    D.H.'s father ("Father") and Valerie are cousins, though Valerie is several years older than Father. Valerie raised Father from the age of 16, after his mother died and there was not another suitable caregiver.

17.    D.H. was born around 2017 to Father and Latoya Gutierrez ("Mother").  This made D.H. Valerie's first cousin, once removed (*i.e.*, one generation removed).  D.H. was the second cousin of Jayde and Zamuarie.

18.    In addition, at the time of D.H.'s birth, due to her long-standing relationship with Father, Valerie effectively acted as D.H.'s grandmother.

19.    Around June 2018, CYFD removed D.H. from where he was living in Curry County, New Mexico, with five half-siblings, all of whom were Mother's children.

20.    Father and D.H. are African-American.

21.    Mother is Hispanic.

22.    D.H.'s half-siblings are all Hispanic.

23.    In October 2018, Jayde sought to obtain a foster parent license, so that D.H. could be placed with her.

24.    CYFD's official policy favors kinship foster placements and adoptions. Empirical evidence also shows that children placed with blood relatives tend to have better outcomes.

25.    D.H.'s five Hispanic half-siblings were all placed with kin.

26.    Jayde passed a background check and home inspection, but the Curry County CYFD office blocked D.H.'s placement with her on frivolous grounds.

27.    At all relevant times, Tamara Letcher was the "Office Manager" for CYFD's Curry County office. In that role, she supervised essentially everyone in the office, and had final say in most decisions related to foster placement decisions.

28.     On information and belief, Letcher and the Doe Defendants blocked D.H.'s placement with Jayde because they did not want Jayde to be placed with African-Americans.

29.     In January 2019, Valerie and Scottie began the process of obtaining foster parent licenses, in hopes of becoming D.H.'s foster parents and, eventually, adoptive parents.

30.     Letcher assigned a CYFD employee to conduct a home inspection. The inspector stated that a pile of clothes on the floor in Valerie's bedroom would "hold things up" for "six months or more."

31.     There was clothing on the floor because, on the day of the inspection, Valerie was swapping out her wardrobe due to changing weather.

32.     Valerie and Scottie had several minor criminal cases years ago which they fully disclosed. Per CYFD's own guidelines, these cases were not disqualifying. Nonetheless, Letcher and the Doe Defendants used the cases as a basis to further delay Valerie and Scottie's licensure.

33.     On information and belief, Letcher directed the home inspector to find things that could be used as a pretext to prevent Valerie and Scottie from fostering D.H., because Letcher did not want D.H. to be placed with African-Americans.

34.     On information and belief, Letcher used the minor criminal cases as a pretext for preventing Valerie and Scottie from fostering D.H., because Letcher did not want D.H. to be placed with African-Americans.

35.     In January 2020, Zamaurie applied for a foster parent license so that D.H. could be placed with her.

36.     A meeting was held at the Curry County CYFD to discuss placing D.H. with Zamaurie. On information belief, Letcher and the Doe Defendants held the meeting to come up with a pretext for denying Zamaurie's request to foster D.H.

37.     Shortly after the meeting, Zamaurie's request to foster D.H. was denied for vague and frivolous reasons.

38.     On information and belief, Letcher and the Doe Defendants blocked Zamaurie's efforts to foster D.H. because they did not want D.H. to be placed with African-Americans.

39.     In February 2020, Valerie and Scottie's application to be foster parents for D.H. was denied by CYFD. On information and belief, the decision to deny their licenses was made by, or on the recommendation of, Letcher and the Doe Defendants.

40.     On December 11, 2020, Valerie and Scottie's administrative appeal was denied. On information and belief, the denial of their application and the appeal denial were racially motivated.

41.     In early 2021, Valerie and Scottie applied again to be D.H.'s foster parents. This time, the review process was handled by the Lea County CYFD office, not the Curry County CYFD office.

42.     In August 2021, Jayde applied again to be D.H.'s foster parent. However, the Curry County CYFD office stalled and hindered Jayde's application.

43.     The Lea County CYFD office moved Valerie and Scottie's application forward without issue. During this process, a Lea County CYFD employee told Valerie and Scottie that the Curry County CYFD office had acted improperly.

44.     In October 2021, Valerie and Scottie were approved as foster parents.

45.     Nonetheless, the Curry County CYFD office continued to insist on non-relative adoption for D.H.

46.     In December of 2021, D.H. was approved for non-relative adoption on the recommendation of the Curry County CYFD office.

47.     Also in December 2021, Valerie, through an attorney, sent a complaint to CYFD about how D.H.'s case had been handled. Valerie suspected (though could not confirm) that her family had been targeted for adverse treatment based on their race.

48.     On January 25, 2023, CYFD's then-cabinet secretary, Barbara Vigil ("Vigil") sent a letter to Valerie, Scottie, Jayde, and Zamaurie, notifying them that, following an investigation by CYFD's inspector general, systemic reforms were being implemented.

49.     On February 3, 2023, CYFD's inspector general notified Valerie that the inspector general had substantiated Valerie's suspicion of racism at CYFD and racial discrimination against Valerie, Scottie, Jayde, and Zamaurie.

50.     Defendants' actions have denied Plaintiffs the opportunity to raise D.H., and ensured that he will grow up with non-relative adoptive parents.

**First Cause of Action**
**Title VI (42 U.S.C. § 2000d)**
**Against CYFD**

51.     Plaintiffs incorporate all allegations in this complaint as if fully set forth in this paragraph.

52.     CYFD receives federal funds and, acting through its employees, intentionally discriminated against Plaintiffs based on race in its licensing process and placement decisions, violating § 601 of Title VI.

53.     Plaintiffs seek declaratory relief, compensatory damages, and attorneys' fees under 42 U.S.C. § 1988(b).

**Second Cause of Action**
**Equal Protection (42 U.S.C. § 1983)**
**Against Letcher and the Doe Defendants**

54.     Plaintiffs incorporate all allegations in this complaint as if fully set forth in this paragraph.

55.     Defendants, under color of state law, intentionally treated Plaintiffs less favorably than similarly situated non-Black applicants, lacking any rational or compelling justification, thereby denying equal protection of the laws.

56.     Plaintiffs seek declaratory relief, compensatory damages, and attorneys' fees.

57.     Defendants' actions were reckless or malicious, warranting punitive damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

58.     A judgment requiring Defendants to pay actual damages, as well as reasonable attorney's fees, expenses, and costs of suit.

59.     Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

**WGLA, LLP**

By: _____

Benjamin Gubernick (SBN 145006)
E-mail: ben@wglawllp.com
Telephone (346) 277-0287
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77002